FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MANUEL ALEJANDRO SANCHEZ,<br><br>　　　　　　　Defendant. | No.　4:19-CR-06052-SMJ-1<br><br>ORDER MEMORIALIZING COURT'S ORAL RULING ON DEFENDANT'S MOTIONS TO DISMISS THE INDICTMENT |

On March 5, 2020, the Court held a hearing on Defendant's first and second motions to dismiss the indictment charging illegal reentry following removal, in violation of 8 U.S.C. § 1326, ECF Nos. 30, 32. In both motions, Defendant seeks to collaterally attack the underlying removal order upon which the instant charge is predicated and thereby establish that the indictment fails to state an offense because the Government cannot prove an essential element.

In the first motion to dismiss, Defendant contends that the immigration court lacked jurisdiction to issue the removal order because the Notice to Appear (NTA) with which Defendant was served failed to specify a date and time for the removal proceedings. ECF No. 30 at 1. In his second motion to dismiss, Defendant contends that the removal order was fundamentally unfair, arguing that his due process rights

were violated in two ways. ECF No. 32 at 1. First, he contends that the immigration judge (IJ) failed to properly evaluate the positive equities of his case before denying his request for pre-conclusion voluntary departure. *Id*. Second, he contends that his attorney in the immigration proceedings provided ineffective assistance of counsel. *Id*.

At the conclusion of the hearing, the Court denied Defendant's first motion to dismiss, finding that, under binding Ninth Circuit precedent, jurisdiction vested in the immigration court when Defendant received subsequent notice of the time and date of his removal proceedings. The Court granted Defendant's second motion to dismiss, finding Defendant had established that the removal order was fundamentally unfair based on the IJ's improper consideration of the positive equities on the record, and that Defendant had satisfied the remaining requirements of 8 U.S.C. § 1326(d). Because the Court granted Defendant's second motion to dismiss the indictment on this basis, it did not decide the issue of ineffective assistance of counsel, though argument on the issue was heard. This order memorializes and supplements the Court's oral ruling.

## BACKGROUND

Defendant Manuel Alejandro Sanchez is an alleged Mexican citizen born in 1985. ECF No. 30 at 2. He first came to the United States in January 1992, when he

was six years old, and remained in the country until he was ordered removed to Mexico in December of 2016. *Id*.

## A. Indictment at Issue

On July 10, 2019, Defendant was arrested by local law enforcement and taken into custody on various charges. ECF No. 7 at 5; ECF No. 21 at 1. On August 7, 2019, he was released to immigration authorities after it was determined that he lacked legal status in the United States and had been previously removed to Mexico. ECF No. 21 at 1. On August 20, 2019, the Government filed an indictment charging Defendant with illegally reentering the United States after previously being removed, in violation of 8 U.S.C. § 1326. ECF No. 1. The charge is premised on a prior removal order issued by an IJ on December 1, 2016, which resulted in Defendant's removal to Mexico on December 7, 2016. ECF No. 30–15. The validity of the removal order is the issue at the core of both motions to dismiss the indictment.

## B. Underlying Removal Proceedings

On January 13, 2016, Defendant was arrested for unlawful possession of methamphetamine and resisting arrest. ECF No. 21 at 10. While on state pretrial release for these offenses, Defendant led police on a vehicular-turned-foot chase and was subsequently arrested and charged with fleeing or attempting to elude a police officer. *Id*. at 11. On March 10, 2016, while Defendant was in state custody on the eluding charge, an immigration officer conducted a telephonic interview with

him, during which Defendant admitted he was born in Mexico, that his parents were Mexican citizens, that he entered the United States twenty-four years ago without legal authorization, and that he had never applied for admission or legal status. ECF No. 30 at 2. Defendant expressed a fear of returning to Mexico and noted his inability to read or write in the Spanish language. *Id*. The immigration officer lodged an ICE detainer with the jail. ECF No. 33 at 6.

On May 27, 2016, Defendant was served with an NTA alleging he was subject to removal because he was present in the United States without having been admitted or paroled and because of his 2016 conviction for possession of methamphetamine; he was also issued a Notice of Custody Determination, indicating he would remain in custody pending his removal hearing. *Id*; ECF No. 30 at 3. It is undisputed that the NTA did not contain a specific date or time for the hearing but rather ordered Defendant to appear for removal hearings on a date and time "to be set." ECF No. 30 at 3–4. Defendant requested a custody redetermination hearing. *Id*. at 4.

On July 21, 2016, Defendant appeared for his first custody redetermination hearing. *Id*. Prior to the hearing, he retained immigration attorney Vicky Currie, who submitted briefing on his behalf. *Id*. At the hearing, however, Defendant withdrew his request for custody redetermination, likely due to his ineligibility for bond resulting from the controlled substance violation. *Id*. at 4–5. Four days later, the

immigration court served a Notice of Hearing on Ms. Currie setting a master hearing for September 27, 2016. ECF No. 30 at 5.

On that date, Defendant appeared for his master hearing, where he was advised he may be eligible for asylum, cancellation of removal, or voluntary departure. *Id*. He was informed of his individual hearing date of March 20, 2017. *Id*. A second custody redetermination hearing was automatically scheduled because Defendant had spent six months in custody. ECF No. 33 at 10–11. Prior to that hearing, Defendant met with an immigration officer and again expressed his fear of returning to Mexico. ECF No. 30 at 7. He also met with Ms. Currie and apparently signed a Request for Voluntary Departure or Expedited Order of Removal, though he does not recall signing or discussing the document. *Id*. at 8.

On December 1, 2016, Defendant appeared for his second custody redetermination hearing; the IJ confirmed with Defendant and his attorney that he wished to withdraw his request for bond, withdraw his applications for asylum and withholding under the Convention Against Torture, and that he intended to seek pre-conclusion voluntary departure. *Id*. at 8–9. The IJ then heard arguments, the contents of which are set forth below, on the issue of voluntary departure. *See* ECF No. 34 at 13–16. The IJ concluded that Defendant had not met his burden to show he merited voluntary departure due to his significant criminal history and non-waivable ground of inadmissibility, and therefore ordered him removed to Mexico. *Id*. at 16–17.

Defendant immediately waived his right to appeal and confirmed his decision with the IJ. *Id.* at 17.

## LEGAL STANDARDS

### A.     Motion to Dismiss Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

### B.     Collateral Attack on a Removal Order

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). Because the removal order serves as a predicate element of the

charge, a defendant charged with illegal reentry may attack the validity of the underlying order of removal. 8 U.S.C. § 1326(d). A defendant making such a challenge must prove three things: (1) that the alien exhausted available administrative remedies; (2) that the proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) that the removal order was "fundamentally unfair." *Raya-Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)).

A defendant can satisfy the first two requirements of section 1326(d) together by showing that his waiver of appeal rights at the removal proceeding was not considered and intelligent, and thus was invalid. *United States v. Morales-Santiago*, 376 F. Supp. 3d 1105, 1115 (E.D. Wash. 2019) (citing *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013)). A waiver of appeal is not valid where the IJ violates a noncitizen's due process rights by depriving the noncitizen of a genuine opportunity to "present evidence in support of [his] claim" for voluntary departure. *See United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (waiver of appeal invalid where defendant was not meaningfully advised of his right to apply for relief and present evidence in support of the claim); *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001) (waiver of appeal not "considered and intelligent" where "'record contain[ed] an inference that the petitioner [was] eligible for relief from deportation,' but the immigration judge fail[ed] to 'advise the alien of this possibility and give him the opportunity to

develop the issue'"); *United States v. Cruz-Aguilar*, 394 F. Supp. 3d 1313, 1323 (E.D. Wash. 2019) (finding waiver of appeal invalid because defendant was deprived of genuine opportunity to present evidence of facts favoring voluntary departure).

To satisfy the third requirement—that the order of removal was fundamentally unfair—the defendant bears the burden of establishing both that the "deportation proceeding violate[d] [his] due process rights" and that the violation resulted in prejudice. *Raya-Vaca*, 771 F.3d at 1201–02 (citing *United States v. Leon–Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994)).

### 1. Due Process and Pre-Conclusion Voluntary Departure

An alien is eligible for pre-conclusion voluntary departure in lieu of removal if he can show "that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." *Villanueva-Franco v. I.N.S.*, 802 F.2d 327, 329 (9th Cir. 1986) (citing 8 U.S.C. § 1254(c)); *see also* 8 C.F.R. § 1240.26(b)(1)(i)(A)–(D) (enumerating requirements for voluntary departure). However, "statutory eligibility does not entitle an alien to voluntary departure." *Villanueva-Franco*, 802 F.2d at 329. Instead, "the alien carries the burden of demonstrating both statutory eligibility and equities to merit the favorable exercise of discretion." *Id.*

When the record before the IJ "contains an inference" that the alien is eligible for voluntary departure, "the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *Moran-Enriquez v. I.N.S*, 884 F.2d 420, 422–23 (9th Cir. 1989)). Where the IJ fails to so advise the alien or fails to "give the alien the opportunity to develop the issue," due process is violated. *See United States v. Lachino-Estrada*, 450 F. App'x 620, 623 (9th Cir. 2011) (noting that, even where IJ advised alien of eligibility, if IJ concludes issue without properly considering equities, IJ fails to comply with requirement to "give the alien the opportunity to develop the issue"); *see also United States v. Espinoza-Sanchez*, 414 F. Supp. 3d 1319, 1326 (E.D. Wash. 2019) (holding due process was violated by IJ's failure to properly weigh positive and negative equities); *Cruz-Aguilar*, 394 F. Supp. 3d at 1322 (holding IJ violated due process rights by failing to give the defendant a genuine opportunity to develop the issue of voluntary departure).

Once the alien has shown statutory eligibility, the decision to grant voluntary departure is left to the discretion of the IJ. *Campos-Granillo v. I.N.S.*, 12 F.3d 849, 852 (9th Cir. 1993), *as amended* (9th Cir. 1994). In reaching his decision, the IJ is not bound by the Federal Rules of Evidence. Rather, "the tests for admissibility are fundamental fairness and probativeness." *Martin-Mendoza v. I.N.S.*, 499 F.2d 918, 921 (9th Cir. 1974).

In evaluating an application for discretionary relief, the IJ must "weigh favorable and unfavorable factors by 'evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively.'" *Campos-Granillo*, 12 F.3d at 852 (quoting *Matter of Edwards*, 20 I. & N. Dec. 191, 195 (BIA 1990) (Morris, J. concurring)). The negative equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident." *Rojas v. Holder*, 704 F.3d 792, 794 (9th Cir. 2012) (citing *In Re Arguelles-Campos*, 22 I.&N. Dec. 811, 817 (BIA 1999)). The positive equities include compensating elements such as

> family ties within the United States; residence of long duration in this country, particularly if residence began at a young age; hardship to the petitioner or petitioner's family if relief is not granted; service in the United States armed forces; a history of employment; the existence of business or property ties; evidence of value and service to the community; proof of rehabilitation if a criminal record exists; and other evidence attesting to good character.

*Campos-Granillo*, 12 F.3d at 852 n.8. Although the IJ must provide more than "mere conclusory statements" in announcing his decision, "all that is necessary is a decision that sets out terms sufficient to enable [] a reviewing court to see that the [IJ] has heard, considered, and decided" the positive and negative equities. *Villanueva-Franco*, 802 F.2d at 330 (citing *Dragon v. I.N.S.*, 748 F.2d 1304, 1306

(9th Cir. 1984); *see also Osuchukwu v. I.N.S.*, 744 F.2d 1136, 1142–43 (5th Cir. 1984).

### 2.    Prejudice

To show prejudice, the Defendant must show that there were "plausible grounds for relief," *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003), meaning relief from removal need not be established to a certainty, but must be shown to be more than a mere "theoretical possibility." *Raya-Vaca*, 771 F.3d at 1207. The burden to show plausibility is not a heavy one and the Defendant "need only establish some evidentiary basis on which relief could have been granted." *United States v. Ortega*, 751 F. App'x 985, 986 (9th Cir. 2018). To determine specifically whether pre-conclusion voluntary departure was plausible, the Court looks at the same positive and negative equities relevant to an IJ's discretionary decision to grant voluntary departure, as discussed above. *United States v. Cervantes-Valencia*, No. 03:11-CR-00326-HZ-1, 2012 WL 1432597, at *7 (D. Or. Apr. 25, 2012) (citing *Melendez-Castro*, 671 F.3d at 955).

## C.    Jurisdiction of Immigration Court

"Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). An NTA constitutes a charging document. 8 C.F.R. § 1003.13. The specific date and time of removal proceedings is not enumerated as a required

component of an NTA under 8 C.F.R. § 1003.15(b), even though it is required by the definition of an NTA set out in a related statute. Instead, 8 C.F.R. § 1003.18 states that the "Service shall provide in the N[TA], the time, place and date of the initial removal hearing, *where practicable*." *Id.* (emphasis added).

In *Karingithi v. Whitaker*, the Ninth Circuit held that the regulations, not the related statutory provision, define when jurisdiction vests in the immigration court. 913 F.3d 1158, 1160 (9th Cir. 2019) *cert. denied sub nom. Karingithi v. Barr*, No. 19-475, 2020 WL 871705 (U.S. Feb. 24, 2020). The *Karingithi* panel reasoned that, because the regulations define jurisdiction, enumerate the requirements for an NTA, and make no reference to the related statutory definition of an NTA—the latter of which does require date and time information—the regulation's definition controls. *Karingithi*, 913 F.3d at 1160. Additionally, the panel found that the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), did not point to a different conclusion as it dealt with an issue distinct from the jurisdictional question relating to NTAs. *Id.* at 1160–61. Finally, the panel held that, so long as the person subject to removal proceedings is timely served with a notice of hearing that includes the date and time of the removal proceedings, jurisdiction vests with the immigration court despite the NTA lacking such information. *Id.*

# DISCUSSION

## A.     First Motion to Dismiss

Defendant first argues that the immigration court lacked jurisdiction to issue the underlying removal order because the NTA he received did not include the specific date and time of the removal proceedings. Defendant does not dispute that he later received notice of the specific date and time of the removal proceedings, or that the subsequent notice was timely. Moreover, Defendant concedes that, under the two-step process set forth in *Karingithi v. Whitaker*, the subsequent notice he received effectively cured the defect in the NTA and vested the immigration court with jurisdiction to issue the removal order.

Sidelining this concession, however, Defendant argues that the Ninth Circuit's decision in *Karingithi* was wrong. Defendant asserts that this Court is not bound by *Karingithi* because he presents an argument that was neither presented to, nor contemplated by, the *Karingithi* panel. Specifically, Defendant argues that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and a transition statute therein (P.L. 104-208 at Div. C, Sec. 309), together elucidate that Congress intended to require statutorily compliant NTAs (as opposed to regulatorily compliant NTAs) in order to confer jurisdiction on the IJ. Defendant emphasizes that the transition statute provided that, where the Attorney General elected to transition an individual from pre-IIRIRA exclusion/deportation proceedings to removal

proceedings, he must provide timely notice of the hearing, which "shall be valid as if provided under section 239 of such Act to confer jurisdiction on the immigration judge." *Id*. at Sec.309(c)(2). He notes that section 239 was 8 U.S.C. § 1229, which enumerated the requirements for an NTA, including that it must specify the date and time of the hearing. Defendant contends that this explicit reference to section 1229 demonstrates congressional intent to require statutorily complaint NTAs to confer jurisdiction on the immigration court, thereby undercutting the *Karingithi* panel's decision, which was based on congressional "silence" on the matter. Finally, Defendant notes that requiring statutorily complaint NTAs, as he contends was intended for the reasons above, is consistent with and buttressed by the Supreme Court's ruling in *Pereira*, which emphasized the significance of date and time information.

Defendant's substantive arguments are not without merit. However, to accept Defendant's argument, this Court would be required to disregard the Ninth Circuit's decision in *Karingithi*, which, when properly applied, undoubtedly leads to the conclusion that the immigration court was vested with jurisdiction when Defendant received subsequent notice of his removal proceedings. This Court is bound by *Karingithi* and cannot simply disregard it, regardless of Defendant's argument as to the merits of that decision. *See E. Bay Sanctuary Covenant v. Trump*, No. 18-17274, 2020 WL 962336, at *5 (9th Cir. Feb. 28, 2020) ("Published decisions of this court

become law of the circuit, which is binding authority that we and district courts must follow until overruled."); *see also United States v. Gonzalez-Sanchez*, 398 F. Supp. 3d 794, 799 (D. Idaho 2019) (rejecting defendant's arguments as to why *Karingithi* was "wrongly decided" because *Karingithi* is binding authority); *United States v. Rojas-Osorio*, 381 F. Supp. 3d 1216, 1227 (N.D. Cal. 2019) (same); *Morales-Santiago*, 376. F. Supp 3d at 1114 (same). Accordingly, the Court denies Defendant's first motion to dismiss.

## B. Second Motion to Dismiss

Defendant next argues that the IJ violated his due process rights by failing to properly consider the positive equities of his case before denying him voluntary departure solely based on his criminal history, and that prejudice resulted.[1] It is undisputed that Defendant was eligible for voluntary departure, and that the IJ advised him of his right to seek voluntary departure. Thus, the two issues for this Court to decide are (1) whether the IJ violated Defendant's due process rights by failing to properly weigh the equities; and (2) whether Defendant has shown it is plausible he would have been granted relief.

---

[1] As noted above, Defendant also argues that his due process rights were violated by his attorney's ineffective assistance. *See* ECF No. 32 at 17–23. The Court did not reach this issue; thus, Defendant's claims regarding the alleged ineffective assistance are not further discussed in this order except insofar as they relate to the IJ's consideration of the equities (i.e., his attorney's failure to formally move to incorporate the bond record into the removal record).

### 1. Consideration of the Equities

In support of his argument, Defendant notes that, at the removal hearing, the IJ remarked that the materials supporting his application were in a separate record not before the court for purposes of the removal hearing. He contends that the IJ's apparent failure to consider the materials in the bond record was significant, as that record contained numerous letters of support from Defendant's parents, sisters, his children's mother, church members, and other family members and friends; his children's birth certificates; employment records; and tax returns. Defendant further contends that the few questions the IJ asked concerning the proffered positive equities cut against their positive nature, demonstrating a lack of genuine consideration. Finally, Defendant contends that the IJ failed to mention, weigh, or consider any of the positive equities in announcing his conclusion denying relief, which was apparently based solely on Defendant's criminal history.

The Government contends that, because Defendant waived his right to appeal, the IJ was only required to express "reasons" for denying the application for voluntary departure and was not required to formally enumerate his findings. The Government notes that, as a matter of practice, IJs only formally enumerate their findings when a party reserves appeal, so the absence of a formal enumeration is typical. Because there was no such enumeration of the findings, the Government argues that Defendant can only speculate that the IJ did not consider the equities

properly and that such speculation is insufficient to meet Defendant's burden.[2] The

Government contends that the IJ's statement concerning material in the bond record

shows the IJ was familiar with the material and was taking it into consideration.

While the IJ need not have issued a written decision or expounded at length

on the basis for his conclusion, he was nevertheless required to explain his reasoning

such that this Court could determine that he considered *both* positive and negative

equities, and had "heard, considered, and decided" the matter in light of those

equities. *See Espinoza-Sanchez*, 414 F. Supp. 3d at 1325; *Campos-Granillo*, 12 F.3d

at 852; *Villanueva-Franco*, 802 F.2d at 330. Here, the record is insufficient to permit

the Court to find that the IJ did so. First, a review of the record shows that the IJ

twice acknowledged that the removal record was separate from the record in the

bond proceeding that preceded it. When Defendant's attorney mentioned

Defendant's employment history and tax records (both positive equities to be

considered) the IJ noted "yeah that's in the bond record not the removal record."

While the parties dispute whether this statement signals consideration or lack

thereof, from the Court's perspective, its import lies in its inconclusiveness; without

---

[2] The Court finds this argument is problematic when followed to its logical end. If, whenever a defendant has waived appeal, IJs left the record devoid of findings (particularly relating to the relative weight of positive and negative equities), they would effectively cripple, by rendering "merely speculative," that defendant's ability to later argue due process violations relating to the fairness of the order which, if proven, could result in an invalidation of the waiver.

making unwarranted assumptions, the statement does not demonstrate the positive equities contained in the bond record were heard, considered, or weighed in the IJ's voluntary departure determination.

Second, it is unclear whether the positive equities proffered at the hearing were properly weighed at any point prior to the IJ's announced decision. Specifically, Defendant's attorney noted such factors as Defendant's nearly twenty-four years spent residing in the United States, starting at the age of six; his three young children, all of whom are United States citizens and reside in the country; his United States citizen fiancé about whom he expressed a hope to marry; his two sisters who reside in the country, one of whom was seeking legal status through a U-visa; his employment record in the United States; and his tax record. These positive equities were not mentioned, alluded to, or discussed by the IJ on the record. The IJ clarified that Defendant's sisters did not have legal status and that Defendant was not yet married; however, such clarifications do not show that the IJ heard or weighed Defendant's relationships, ties to the community, or contributions to society in reaching his decision. In contrast, it is clear that the IJ considered the negative equities, namely Defendant's prior criminal convictions, which he read aloud on the record. In finding that Defendant failed to meet his burden to merit voluntary departure, the IJ solely noted Defendant's "significant criminal history." The emphasis on Defendant's negative equities and absence of discussion regarding

his positive equities simply do not permit the Court to find that they were properly weighed. *See Espinoza-Sanchez*, 414 F. Supp. 3d at 1324 (holding "mere conclusory statements" are insufficient). The Court finds that Defendant has met his burden to show that his due process rights were violated by the IJ's failure to properly consider the positive equities in his case.

## 2. Plausibility of Relief

Defendant argues that the due process violation resulted in prejudice because it was plausible that, had his positive equities been properly weighed, an IJ would have granted him pre-conclusion voluntary departure. The Government argues Defendant cannot show such plausibility due to his criminal history—primarily, his conviction for possession of methamphetamine.

"'Plausible' connotes a degree of probability between 'possible' and 'probable.'" *Ortega*, 751 F. App'x at 986 (internal citations omitted). While Defendant must demonstrate that it is plausible an IJ would have granted him voluntary departure at the time of his removal hearing, the "burden is not a heavy one—[he] need only establish 'some evidentiary basis on which relief could have been granted.'" *Id.* (internal citations omitted). Here, Defendant has done so. As discussed above, Defendant's most significant positive equities included his near-lifetime residence in the United States (twenty-four years, since the age of six); three young United States citizen children and citizen fiancé; a history of

employment; tax records; and lack of prior immigration proceedings. His negative equities include his prior criminal convictions: harassment (2006); second degree theft (2014); attempt to commit assault on public safety officer and harassment (2015); unlawful possession of methamphetamine and fleeing or attempting to elude a police officer (2016). While Defendant's criminal history was not insignificant, his equities are comparable with, or slightly more favorable than, those of noncitizens in other cases where prejudice has been found. *See id.* (finding relief plausible for Defendant with twenty-two years in the country, two citizen children, continuous employment, misdemeanor convictions for theft, property destruction, driving under the influence, fourth degree assault, three violations of protective orders relating to his wife, and felony bail jumping); *United States v. Alcazar-Bustos*, 382 F. App'x 568, 570–71 (9th Cir. 2010) (finding relief plausible for Defendant with near lifetime residence in country, citizen family members, juvenile convictions for burglary, battery, vehicular theft, adult convictions for possession of firearms, associations with gang members, prior drug use, and sporadic work history). Moreover, relief was not rendered implausible merely on the basis of Defendant's single conviction for possession of a controlled substance. *See Cervantes-Valencia*, No. 03:11-CR-00326-HZ-1, 2012 WL 1432597, at *7 (D. Or. Apr. 25, 2012) (finding relief plausible for Defendant who pleaded guilty to possession of controlled substance and fourth degree assault); *United States v.*

*Monje-Campos*, No. EDCR 18-00334 JGB, 2019 WL 7576679, at *6 (C.D. Cal. June 10, 2019) (finding relief plausible for Defendant with conviction for controlled substances offense). Accordingly, the Court finds that Defendant has established "some evidentiary basis upon which relief could have been granted," *Raya-Vaca*, 771 F.3d at 1207, and thus, has established prejudice.

## CONCLUSION

Defendant has satisfied all three requirements to collaterally attack his removal order. 8 U.S.C. § 1326(d). Defendant has demonstrated that the removal order was fundamentally unfair based on the IJ's failure to properly consider the positive and negative equities when evaluating his application for voluntary departure. Consequently, he has established that he was deprived of due process at his 2016 removal hearing. Defendant has further established that prejudice resulted from the violation because it was plausible that an IJ would have granted him relief after proper consideration. Finally, because Defendant was not given a genuine opportunity to present evidence favoring his application, his waiver of his right to appeal was invalid and he is excused from satisfying the first two requirements. Accordingly, the 2016 order of removal cannot serve as the predicate for the instant charge and the indictment must be dismissed.

**IT IS HEREBY ORDERED**:

1. Defendant's First Motion to Dismiss, **ECF No. 30**, is **DENIED.**

2.    Defendant's Second Motion to Dismiss, **ECF No. 32**, is **GRANTED**.

3.    All deadlines, scheduled hearings, and the trial date are **STRICKEN**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Marshals Service, and the U.S. Probation Office.

**DATED** this 11th day of March 2020.

SALVADOR MENDOZA, JR.
United States District Judge